IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHAUNCEY DEMETRIUS BENNETT    *

Plaintiff,    *

    v.    *    CIVIL ACTION NO. JKB-16-4069

WARDEN JOHN WOLFE    *
LIBRARIAN JUNE BRITTINGHAM
LT. VANESSA JONES    *
SECRETARY STEPHEN MOYER
COMMISSIONER DAYENA CORCORAN    *
COMMISSIONER CAROLYN SCRUGGS
    *
Defendants.
    *****

## **MEMORANDUM**

Pending before the court are a motion to dismiss or, in the alternative, motion for summary judgment filed by defendants Warden John Wolfe, Librarian June Brittingham, Lieutenant Vanessa Jones, Secretary Stephen Moyer, and Commissioners Dayena Corcoran and Carolyn Scruggs (ECF No. 15) and Chauncey Demetrius Bennett's opposition. ECF No. 17. Upon review of the pleadings, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, defendants' dispositive motion will be granted.

### **I. Complaint Allegations**

Bennett is currently confined at Eastern Correctional Institution ("ECI") in Westover, Maryland. His complaint alleges that on July 27, 2016, he wrote an administrative remedy procedure grievance claiming that he had been removed from the special exception library pass. Bennett claims that this action commenced because of his civil litigation. ECF No. 1, p. 4. He

further claims that he was denied the ability to take out Black's Law Dictionary, which he claims was needed to challenge the conditions of his confinement. Bennett contends that the psychological abuse he has experienced has caused him to "[seek] psychology aid and [receive] ridicule [*sic*] treatment from staff, as well as inmates." ECF No. 1, p. 4. He maintains that he has been denied adequate time to conduct research so as to prepare documents to be filed with the courts, violating his First Amendment rights. Bennett further claims he has been deprived of copy work from case management personnel and there is no "proof that I turn in vouchers for copying card, to assure my merits." Bennett complains that there is no legal training, no printer to copy the law off the computer, no updated legal research books, no available correction tape, and access to "very old typewriters." He contends that his time in the library is extremely limited due to prison lockdowns and his requests for materials from the Library Assistance to State Institutions program ("LASI") takes nearly two months. Bennett additionally complains that boots are not allowed in the library, "enhancing discrimination" as weather during the fall and winter months necessitates proper foot wear. He claims that Secretary Moyer was on notice due to a letter Bennett wrote to Assistant Warden West on August 30, 2016. He states that the ARP responses violate the Constitution as he is "being deprived of current case law, to litigate current case law."[1] *Id*., pp. 4-7.

In later letter filings construed as amendments to his original complaint, Bennett complains that on February 15, 2017, he was cited with an infraction for using a public bathroom. He further asserts that during the month of April 2017, the library was closed on one

---

[1] Accompanying his complaint are Bennett's exhibits, which include photocopies of citations and case law references, request forms to LASI, grievances and official responses, and Bennett's letter written to ECI personnel regarding his prison concerns. ECF No. 1, Filed-Separately Exhibits.

day; three passes were issued for the library; he received clearance to review reference materials; and he was permitted to attend a seminar, but was "fussed at" by the librarian for leaving the seminar to go to the bathroom. Bennett complains that the library was closed on several days in April and May of 2017, the legal research books, such as the Georgetown Journal and Maryland Rules, are not updated, there is no printer to copy legal materials, and personnel fail to provide him adequate time in the library. ECF Nos. 6 & 10.

## II. Dispositive Response

Defendants state that Bennett received an ECI inmate handbook on May 9, 2013, that advises inmates about access to the library, legal services, and copies and addresses for legal services. They assert that the handbook informs inmates that the librarian is not an attorney, but can assist them in attaining help; further, they are allowed to have legal materials in their cells as long as they follow institutional rules about space, safety, fire, and security, the institutional library has books available for reference, and each housing unit has a scheduled library day each week. ECF No. 15-3, pp. 5, 10, 13 & 27-32.[2]

Defendants maintain that library services are available daily, including on weekend and in the evenings. The schedule for library visits is to be posted in the library and all housing units. Further, the addresses for the state courts, Legal Aid Bureau, Federal Public Defender system, and Prisoner Rights Information System (PRISM) are provided in the prisoner handbook. *Id.*, pp. 13, 27-32. Defendants explain that under a prison directive, ECI inmates have access to legal reference materials and paper, typewriters or typing services, photocopiers, and other supplies and services related to legal matters at the inmate's expense through the

---

[2] All references to exhibits are made to electronic pagination.

commissary.  Further, LASI service and library programs are available to ECI inmates.  ECF No. 15-4, pp. 2-7.

Defendants contend that the ECI librarian posts the monthly schedule in the library and on housing unit bulletin boards.  ECF No. 15-5, Brittingham Decl.  According to the monthly schedule for Housing Unit 2, where Bennett is housed, inmates may access the library daily through either "reference" or "regular" passes.  *Id*., ECF No. 15-5, Brittingham Decl.  Regular passes allow the inmate 45 minutes in the library.  A reference pass extends the time inmates are allowed in the library to two periods for a total of 90 minutes.  Librarians create a reference pass list for those who request it and unit officers are responsible for distributing the passes.  In addition to the foregoing, Brittingham, the ECI librarian, initiated a process wherein pro se inmates who had pending court cases were accommodated with additional library time.  She issued them "special exception" passes as long as they could produce documentation of the pending court case.  Several inmates complained about the practice and in June of 2016, it was discontinued by the ECI Assistant Warden to allow all inmates equal access to the library.  Brittingham affirms that as a courtesy, she issued special exception passes to those inmates with pending court cases.  *Id*.

Prior to February 2017, up to 50 inmates at a time could access the ECI library because a correctional officer was posted there.  However, due to a reduction in correctional officers for the library post assignment, only 20 inmates can access a library at a time pursuant to the Department of Public Safety and Correctional Services.  This includes five inmate library workers.  *Id*.

4

Defendants assert that the ECI library maintains up-to-date legal reference materials including Black's Law Dictionary and the Maryland Rules. The Maryland Rules are updated yearly. The 8th Edition of Black's Law Dictionary is available to the entire ECI prison population and must therefore remain in the library as a reference book. A 5th Edition of Black's Law Dictionary is available for check out. Inmates may review reference material in the library and may also request check-out copies of limited reference pages for review outside of the library in the event they are unable to review materials while in the library. ECF No. 15-5, Brittingham Decl. Black's Law Dictionary is updated every three years. The most recent Georgetown Journal is from 2016. There are three computers that contain Lexis/Nexis databases, which are updated four times per year. Two other computers contain legal reference materials including sentencing guidelines, health care bills, and information on veterans' issues. Inmates may request, free of charge, up to five judicial opinions per request per week by filling out a LASI order form with the librarian. The librarian forwards the approved orders to LASI for processing. The LASI orders are filled and copies of cases are sent back to the libraries for distribution to the inmates. According to Brittingham, Bennett placed two LASI orders dated April 21, 2016 and September 23, 2016. The orders were filled and returned to the library on June 9, 2016 and November 10, 2016. *Id.*

Defendants maintain that the library does not provide printers, but does provide typewriters for inmate use. *Id.* Indigent inmates who are unable to purchase copies may qualify to receive copies at no charge. Additional paper and envelopes for legal correspondence is provided as necessary to facilitate access to the courts. ECF No. 15-8, pp. 5-11. Defendants acknowledge that boots are not permitted in the Education Building where the library is located

5

for security reasons, but inmates may wear sneakers in the Building. ECF No. 15-5, Brittingham Decl.

Defendants state that a law-related seminar was held at the library on April 13, 2017. Inmates could attend the seminar upon prior written request. They argue that Bennett did not make an advance request to attend the seminar, but instead came to the library the day of the seminar and insisted that he be allowed to attend. Brittingham affirms that she nonetheless made arrangements for Bennett to attend. She maintains that he arrived late and was boisterous, but eventually settled down and sat through the remainder of the seminar. At the conclusion of the seminar, the inmates were instructed not to leave the library before meal time, which was about to start. Bennett nevertheless exited the seminar room and went to the bathroom. Brittingham states that she asked Bennett where he was going and advised him he was not allowed to leave the library. Bennett told her he was going to the bathroom because he had taken medication and had to go. ECF No. 15-5, Brittingham Decl. Brittingham advised him that anyone taking medication usually has medical paperwork if it causes them to have to use the bathroom. He was cautioned that leaving the seminar room is out of bounds and he could get an adjustment ticket from the correctional officer. Bennett left the seminar room and did not return. Brittingham denies "fussing" at Bennett. *Id*.

Lieutenant Vanessa Jones is an ECI corrections officer posted to Housing Unit 2, where Bennett is assigned. Her duties also involved investigating administrative remedy procedure (ARP) grievances, and she was the assigned supervisory official at the ECI Education, Medical and Gymnasium buildings. ECF No. 15-6, Jones Decl. Jones investigated Bennett's grievance that his weekly library hours had been reduced (ARP ECI-502-17). Her investigation revealed

6

that as a result of daily post assignment change, the inmate occupancy limit in the ECI library had been reduced from 50 to 20 inmates. She claims she has no control over the issuance of library passes or in eliminating library post assignments and maintains that she never reduced, restricted, or impeded Bennett's ability to access the prison library or his access to legal resource material. ECF No. 15-6, Jones Decl.

On January 4, 2016, Bennett filed ARP ECI 0038-16, alleging that Warden Green had violated his rights as he had been deprived of library access for one month on the morning shift. The ARP was investigated by Diane King and dismissed on February 5, 2016. The ARP response included a letter from Brittingham explaining the library policies and Bennett's attendance. Documentation showed that Bennett was granted reference time in the library for a total of eight days in November and December 2015, during which time he checked out three reference books. The appeal of this decision was dismissed. ECF No. 15-8, pp. 12-27

On June 6, 2016, Bennett filed ARP ECI-1204-16, in which he complained that he had been discriminated against as to whether library material has a checkout or reference designation. The ARP was dismissed based on the finding that Bennett had not been denied the opportunity to check out Black's Law Dictionary as he could have checked out an older edition and had access to the current edition while in the library. The appeal of this decision was dismissed. *Id*., pp. 28-36.

On July 27, 2016, Bennett filed ARP ECI 1644-16 complaining he had been removed from the library exception pass list. The ARP was administratively dismissed pending resubmission by a given date. Bennett resubmitted the ARP belatedly and the grievance was dismissed as untimely. His appeal was procedurally dismissed by Commissioner Carolyn

Scruggs for the failure to follow instructions to resubmit additional information by a due date. *Id*., pp. 37-41. Bennett filed an appeal with the Inmate Grievance Office (IGO), which was administratively dismissed on January 11, 2017, for non-exhaustion. ECF No. 15-7, Neverdon Decl.

On August 8, 2016, Bennett filed ARP ECI 1744-16, alleging that he had been informed by Lt. Jones that Brittingham was no longer issuing special exception passes. The ARP was administratively dismissed pending resubmission by August 25, 2016, on the basis that it contained multiple unrelated issues. The ARP was resubmitted on October 5, 2016, and again administratively dismissed for the failure to follow instructions. ECF No. 15-8, pp. 42-44. Bennett appealed this decision, indicating that he had been deprived of adequate time in the library to prepare for court proceedings. ECF No. 15-7, Neverdon Decl. The appeal was administratively dismissed on January 11, 2017, as being repetitive to his earlier IGO Appeal of ARP ECI-1644-16. Defendants argue that none of the ARPs were signed by Warden John Wolfe. *See generally* ECF No. 15-8.

Defendants state that when talking to an investigator during the course of an investigation into Bennett's ARP, not related to this case, Bennett offered to withdraw his two pending ARPs if two inmates who lost their jobs in the Dietary Department were rehired. On August 31, 2016, Bennett was charged with violating Rule 307, the commission of an act of extortion, bribery, or coercion. As a result of this rule violation, he was re-classified out of the ECI West Dietary Department for an inability to accept, receive, or follow department instructions, directions, rules, regulations, policies, or procedures. An adjustment hearing was held on September 15,

8

2016. Bennett was found guilty and sanctioned with 10 days of cell restriction. ECF No. 15-8, pp. 44-72.

Defendants state there is no record of any letter Bennett sent to Secretary Moyer or to Division of Correction Commissioners in August of 2016.[3] ECF No. 15-9, Gaskins Decls.

In his opposition, Bennett alleges that defendants' motion shows that library services are limited due to restricted hours and staffing shortages. ECF No. 20. He claims that only the 2015 Georgetown Journal is available, Black's Law Dictionary, 5th Edition, has been misplaced for two years and the hours of access to the library are inadequate.[4] ECF No. 17.

### III. Applicable Legal Standard

Because defendants have filed and relied on declarations and exhibits attached to their dispositive motion, their motion shall be treated as a summary judgment motion. Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides in part,

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

---

[3] Defendants also respond to Bennett's secondary claims found in his ARPs. They assert that he has no entitlement to a prison job, his claim of verbal harassment (Brittingham's fussing at him) does not state a claim, and his property claims are not colorable, as he was afforded a post-deprivation remedy. ECF No. 15-1, Mem at pp. 17-19.

[4] Bennett's opposition includes extraneous references to (1) the theft and/or loss of his property, *i.e.*, a boom box and clothing, the inadequacy of the reimbursement amount he received, and his ability to send the items home, (2) the out-of-bounds infraction he received for leaving the law-related seminar and using the bathroom, and (3) his loss of a dietary job. ECF No. 17.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In *Anderson*, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## IV. Analysis

**A.     Respondeat Superior**

In order for liability to exist under 42 U.S.C. § 1983, the defendant must be personally involved in the alleged violation. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Under *Shaw*, supervisory liability may attach under § 1983 if a plaintiff can establish three elements: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) an "affirmative causal link" exists between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* at 799 (citations omitted).

No allegation demonstrates the supervisory liability of Warden Wolfe, Secretary Moyer, and Commissioners Scruggs and Corcoran with regard to the First Amendment concerns at issue here. *See Shaw*, 13 F.3d at 799. Indeed, aside from Bennett's conclusional statements, no evidence shows that these administrators had actual or constructive knowledge of alleged problems with Bennett's access to the law library, reference materials, or ability to obtain copy work. The liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Bayard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Bennett's claim with regard to the Warden, Commissioners, and Secretary are based on their supervisory positions. They do not appear to have been personally involved in the issues presented here or to have had actual or constructive knowledge thereof. Accordingly, Warden Wolfe, Secretary Moyer, and Commissioners Corcoran and Scruggs are entitled to summary judgment as a matter of law.

The court shall next examine whether summary judgment in favor of the individual defendants, Ms. Brittingham and Jones, would be appropriate.

**B.     Access-to-Courts Claims**

Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *see also Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). In 1996, the Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable, but only when the inmate is able to demonstrate actual injury from such

deprivation. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). According to the *Lewis* opinion, the Constitution does not guarantee inmates the ability to litigate every imaginable claim they can perceive, only that they be given the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355. To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim." *Id.* at 351; *see also Pearson v. Simms*, 345 F. Supp. 2d 515, 519 (D. Md. 2003).

The plaintiff must show actual injury resulting from the alleged denial of access. *Lewis*, 518 U.S. at 349. The plaintiff must identify with specificity the actual injury resulting from the defendants' conduct. *Cochran v. Morris,* 73 F.3d 1310, 1316-17 (4th Cir. 1996). The "'actual injury' that an inmate must demonstrate is that the alleged shortcomings in the prison library or legal assistant program have hindered, or are presently hindering, his efforts to pursue a non-frivolous legal claim." *Lewis*, 518 U.S. at 343; *see also Michau v. Charleston Cnty., S.C.*, 434 F.3d 725, 728 (4th Cir. 2006) (in access-to-court claim, inmate must allege and show that he or she has suffered an actual injury or specific harm to his litigation efforts as a result of the defendant's actions).

Bennett has failed to show that his inability to check out the Black's Law Dictionary, to obtain greater access to library legal research materials, to have a more recent copy of the Georgetown Journal, or to obtain copy work of case law from LASI in a more expeditious

manner caused him real injury in his ability to litigate his cases. No First Amendment violation has been demonstrated.[5]

**C. Retaliation**

"Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *ACLU of Maryland, Inc. v. Wicomico Cty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993) (citing *Perry v. Sindermann,* 408 U.S. 593, 597 (1972)). A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-87 (1977); *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (*en banc*). In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

To make out a retaliation claim under § 1983, a showing of adversity is essential. *ACLU of Maryland, Inc.*, 999 F.2d at 785 (citation omitted). "The plaintiff bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision." *Graham v. Henderson*, 89 F.3d

---

[5] As no First Amendment claim has been demonstrated, the court need not address the defendants' immunity or administrative exhaustion arguments.

75, 79 (2d Cir. 1996) (citing *Doyle*, 429 U.S. at 287). The inmate must allege facts sufficient to show that the alleged act of retaliation had a chilling effect on his exercise of the right of access to the courts. *ACLU of Maryland,* 999 F.2d at 784. In the prison context, the plaintiff must establish that the prison authorities' retaliatory action did not advance the institution's legitimate goals of preserving internal order and discipline or that it was not narrowly tailored to achieve such goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985) (citations omitted). The preservation of internal order and discipline constitutes a legitimate goal of the correctional institution. *Id*. at 532. After Plaintiff makes a prima facie showing, the burden shifts to Defendants to demonstrate that they would have reached the same decision even in the absence of Plaintiff's constitutionally protected conduct. *Doyle*, 429 U.S. at 287.

Affording Bennett's allegations a liberal construction, he seemingly alleges that he was removed from the special exception pass list for filing litigation. According to the librarian's declaration, however, in June of 2016, the special exception pass list was discontinued by the Assistant Warden due to complaints from other inmates. ECF No. 15-5, Brittingham Decl. Bennett has failed to produce any evidence to contradict this evidence. Further, Bennett has failed to demonstrate, as required, any chilling effect as a result of the alleged retaliatory conduct. After the allegedly retaliatory conduct, Bennett instituted this case and others, and he also filed additional ARPs and prosecuted them to the IGO level. In light of the foregoing, Plaintiff has failed to demonstrate how the allegedly retaliatory conduct chilled the exercise of his right to access the courts, and his claim, therefore, fails.

**D. Miscellaneous Claims**

To the extent that Bennett raises secondary claims in his ARPs and amendments regarding the loss of his dietary job, the theft or loss of his boom box and clothes, and the adjustment he received in April of 2017 for leaving the seminar to use restroom facilities, those matters shall not be addressed here. Bennett has no constitutional right to prison employment and has no liberty interest in being assigned to a specific job. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996); *Frazier v. Coughlin*, 81 F.3d 313 (2d Cir. 1996) (per curiam); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995); *see also Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Paoli v. Lally*, 812 F.2d 1489, 1492-93 (4th Cir. 1987). Consequently, his removal from his dietary job does not violate due process.[6] Further, insofar as Bennett is claiming that his boom box and clothing were destroyed or lost, no due process violation has been demonstrated due to his access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U.S. 527, 542–44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post-deprivation remedy. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982). The Supreme Court extended its *Parratt* holding to intentional deprivations of property. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Finally, Bennett raises no particular constitutional challenge to his April 2017 adjustment. Consequently, this claim shall be dismissed without prejudice.

---

[6] This issue was addressed in *Bennett v. Wolfe, et al.*, Civil Action No. JKB-17-302 (D. Md.).

For the aforementioned reasons, defendants are entitled to summary judgment. A separate Order follows.

Dated this 20th day of February, 2018.

BY THE COURT:

/s/
James K. Bredar
Chief Judge